23CA0857 Peo v Anderson 07-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0857
Adams County District Court No. 20CR3540
Honorable Mark Warner, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cornelious Anderson,

Defendant-Appellant.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE GROVE
Gomez and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 9, 2026

---

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Emily Hessler, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Cornelious Anderson, appeals the district court's restitution order.  We reverse the order and remand to the court for further findings.

## I.    Background

¶ 2    On September 6, 2020, Anderson shot and injured the victim during a failed robbery attempt in a motel parking lot.  As a result of the shooting, the victim needed multiple surgeries, lost his spleen, and was left paralyzed from the waist down.

¶ 3    A jury convicted Anderson of attempted second degree murder, first degree assault, attempted aggravated robbery, and two crime of violence counts.

¶ 4    Before sentencing, the prosecution filed a motion for restitution, requesting, as relevant here, $62,563.16 payable to the Minnesota Department of Human Services (MDHS).[1]  The prosecution attached to the motion a letter from MDHS indicating that it had paid $62,563.16 in "medical expenses . . . related to the

---

[1] In this motion, the prosecution also requested $15,254.80 in restitution payable to the Colorado Department of Health Care Policy and Financing.  However, the prosecution never sought a ruling on that request, and the district court did not address it.  We therefore do not consider it further.

[victim's] injury of 09/06/2020." Attached to the letter was a 119-page "claims history profile," which listed various diagnosis codes and claim payments for the victim's medical services from October 2020 to September 2022.

¶ 5 At the beginning of the sentencing hearing on November 30, 2022, defense counsel asked the district court to set a restitution hearing "so we can contest the amount." The court then sentenced Anderson to an aggregate forty-eight-year term in prison. The court scheduled a restitution hearing for February 2023.

¶ 6 In the mittimus the district court issued that day, there was no mention of restitution. And in a minute order also issued on the day of sentencing, the court only said that the "matter [was] set for [a] restitution . . . hearing."

¶ 7 Anderson was not present at the February 10, 2023, restitution hearing because the prosecution failed to secure his appearance via a writ. The court continued the hearing to February 27, 2023 — a date still within the ninety-one-day statutory period. When Anderson did not appear at the rescheduled hearing, the prosecutor told the court that he had refused to be transported from the jail. The court found good cause to continue the hearing a

2

second time to April 7, 2023, which was past the ninety-one-day deadline to impose restitution.

¶ 8 At the April 7 hearing, defense counsel asserted that the district court had "lost jurisdiction" because more than ninety-one days had passed since sentencing. The court rejected this argument, explaining that it had previously found good cause to extend the deadline.

¶ 9 The prosecutor said he would not be calling witnesses and asked the district court to impose restitution based on the filings.Defense counsel objected, arguing that the restitution filings were insufficient to establish proximate cause. She reasoned that there was no documentation regarding how MDHS "filter[ed]" the costs; pointed out that the billing records covered periods of time "well beyond the date of the offense"; and argued that the files did not demonstrate how the costs related to Anderson's actions.

¶ 10 In response, the prosecutor explained that the restitution request was from "Minnesota's version of Medicare." He said that "the People had reached out to the health treatment facility overseeing the [victim's] recovery" and that the facility had provided

information about "necessary treatments" that were a "direct result" of Anderson's actions.

¶ 11 The district court said that it had reviewed the documentation and the court file and found that the prosecution had proved by a preponderance of the evidence that Anderson proximately caused the claimed losses. The court relied on the submitted documentation, including the letter that said the expenses were "related to" the victim's injuries from September 6, 2020, as well as the verdicts. One hundred and twenty-nine days after sentencing, the court ordered restitution paid to MDHS for $62,563.16. The court did not issue an updated mittimus to reflect restitution.

## II. Statutory Violations

¶ 12 Anderson contends that the restitution order should be vacated because the district court: (1) lost authority to impose restitution when it failed to enter an order or make any finding of liability at sentencing consistent with section 18-1.3-603(1)(b), C.R.S. 2020; and (2) imposed restitution after the statutory

ninety-one-day deadline without an adequate and supported good cause finding.[2] We disagree on both counts.

## A. Applicable Law

¶ 13    Under section 18-1.3-603(1), every judgment of conviction must contain one of four orders regarding restitution: (1) an order requiring a specific amount of restitution; (2) an order that the defendant is obligated to pay restitution but reserving the question of the amount of restitution owed for up to ninety-one days; (3) an order fixing restitution and requiring the defendant to pay certain future costs; or (4) a finding that no victim suffered a pecuniary loss and therefore no restitution order is being entered. *People v. Weeks*, 2021 CO 75, ¶ 3. A sentence that fails to include one of these four restitution orders is a sentence not authorized by law

---

[2] At the time of the offenses in 2020, district courts had ninety-one days following the order of conviction to determine a specific amount of restitution. § 18-1.3-603(1)(b), C.R.S. 2020. In 2025, the General Assembly amended the deadline such that courts must determine a specific amount of restitution within sixty-three days following the later of (1) the prosecution's presentation of restitution information or (2) the order of conviction. Ch. 307, sec. 1, § 18-1.3-603(1)(b), 2025 Colo. Sess. Laws 1606. All citations to section 18-1.3-603 in this opinion are to the 2020 statute.

under Crim. P. 35(a) that may be corrected at any time. *Tennyson v. People*, 2025 CO 31, ¶ 2 (*Tennyson II*).

¶ 14     An order entered under section 18-1.3-603(1)(b) — reserving the question of the amount of restitution owed — requires the judgment of conviction to *assign liability* for restitution, even though the amount is determined later. *See Sanoff v. People*, 187 P.3d 576, 578 (Colo. 2008). Section 18-1.3-603(1) does not "authorize the court to address the issue of restitution in a judgment of conviction by entering an order deferring that issue in its entirety." *Weeks*, ¶ 30. Rather, section 18-1.3-603(1)(b) "allows the court to shelve the determination of the *amount* of restitution after entering a preliminary order requiring restitution." *Id.*

¶ 15     After a district court enters an order under section 18-1.3-603(1)(b), it must still determine the amount of restitution owed within ninety-one days after the judgment of conviction enters unless, before the deadline expires, the court finds good cause for extending the deadline. *Weeks*, ¶¶ 4-5, 39. Absent an express and timely good cause finding, a court lacks authority to enter an order fixing the amount of restitution once the statutory deadline has expired. *Id.* at ¶ 45.

B.    Preservation and Standard of Review

¶ 16    The parties dispute whether Anderson preserved this argument for appeal.  However, the parties acknowledge, and we agree, that preservation is not required here because Anderson is challenging the legality of his sentence.  *See Tennyson II*, ¶ 2.

¶ 17    We review the legality of a sentence de novo.  *Id.* at ¶ 23.  We likewise review de novo whether the district court correctly interpreted and applied the restitution statute.  *Weeks*, ¶ 24.

C.    The Order at Sentencing Under Section 18-1.3-603(1)(b)

¶ 18    Anderson argues that, rather than entering an order under section 18-1.3-603(1)(b) at sentencing, the district court "reserved determination of whether restitution was owed at all."  He reasons that the court said nothing at sentencing to indicate that he was liable for restitution, and the mittimus contained no mention of restitution.

¶ 19    We conclude for several reasons that the district court — albeit implicitly — found that Anderson was liable for restitution at the time of sentencing and entered an order to that effect under section 18-1.3-603(1)(b).

¶ 20    First, in response to the prosecution's restitution request, which was submitted before sentencing, defense counsel asked the district court to set a restitution hearing to "contest the amount." The court granted Anderson's request. Because it set a hearing to allow Anderson to contest the amount of restitution owed, we can infer that the court determined that Anderson was liable for restitution in an amount that would be determined at the hearing. *See People v. Tennyson*, 2023 COA 2, ¶ 37 (rejecting the defendant's argument that the district court impermissibly reserved the issue of restitution in its entirety, in part because at sentencing the court orally granted him time after the prosecution presented restitution information to "challenge 'the figure' submitted"), *aff'd, Tennyson II* (*Tennyson I*).

¶ 21    Second, the good cause finding and the ninety-one-day deadline that the district court referenced appear in section 18-1.3-603(1)(b), which applies only when the court has assigned liability but defers determination of the amount of restitution. And the court said nothing to suggest that it was entering any of the three other orders allowed under the restitution statute or that it was reserving the issue of restitution in its entirety. *See Weeks*, ¶ 7

n.4 (When making express findings of good cause to extend the court's deadline, "talismanic incantations" are not necessary, and "substance controls over form."); *cf. id.* at ¶ 45 (concluding that the trial court lacked authority to enter restitution, in part because it granted the prosecution's request to have the issue of restitution "remain open" for ninety-one days after sentencing).

¶ 22    Third, although the mittimus did not mention restitution, we do not agree that this omission means that the district court left open the issue of restitution in its entirety.  A court's oral pronouncement at sentencing takes precedence over the mittimus. *People v. Wiseman*, 2017 COA 49M, ¶ 52.  And here, the record supports a conclusion that the district court found at sentencing that Anderson would be liable for restitution.  *See Tennyson I*, ¶ 37 ("We acknowledge that an order obligating Tennyson to pay restitution was not included on Tennyson's mittimus, as required by *Weeks*.  But the record here supports that at sentencing the district court orally granted the prosecution ninety days 'to determine what restitution is due and owing.'  We read this statement to mean that the court considered and ordered that

9

Tennyson was liable to pay restitution and the court reserved only the determination of the restitution amount.").

¶ 23    To be sure, the better practice would have been for the district court to explicitly state that Anderson was liable for restitution and that the court was only reserving the question of how much restitution he must pay, and to include this on the mittimus. Nonetheless, after considering the record as a whole, we conclude that the district court implicitly found that Anderson was liable for restitution and deferred only a determination of the specific amount he owed for ninety-one days under section 18-1.3-603(1)(b).  *Cf. Snow v. People*, 2025 CO 32, ¶ 29 ("By contrast, here, the record of the district court proceedings is barren of an explicit or implicit finding of restitution liability either before or during the sentencing hearing.  Rather, the issue of restitution was conspicuously absent from the plea agreement and the providency hearing, and the colloquy between the court and the prosecution at the sentencing hearing left no doubt that everyone intended to defer until after sentencing the issue of restitution in its entirety.").  Anderson's argument that his sentence is illegal because the court "reserved determination of whether restitution was owed at all" therefore fails.

## D. The District Court's Good Cause Finding

¶ 24 While conceding that the district court's good cause finding to reset the hearing past the ninety-one-day deadline to impose restitution was made expressly and timely, Anderson asserts that it was inadequate and unsupported by the record.

¶ 25 Anderson first takes exception with the prosecution's failure to writ him for the February 10 hearing, which left only nineteen days for the district court to reschedule a hearing before the ninety-one-day deadline expired. He argues that this apparent oversight was "akin to a situation in which the prosecution fails to file a restitution motion until the last minute, without justification," and maintains that there was no good cause to extend the court's ninety-one-day deadline under section 18-1.3-603(1)(b). However, the prosecution's failure to ensure Anderson's appearance at the February 10 hearing did not ultimately bear upon the court's subsequent decision to extend the ninety-one deadline. To the contrary, the only consequence of Anderson's absence on February 10 was that the court pushed the hearing back to February 27 — a date still within the ninety-one-day statutory period.

¶ 26    Next, Anderson challenges the district court's reliance on the prosecution's assertion that he was not present at the February 27 hearing because he had refused the writ. He argues that the court erred by finding good cause under 18-1.3-603(1)(b) based on his absence because (1) the court did not find the prosecution's statement credible, and defense counsel suggested it was not; and (2) nothing in the record establishes that Anderson's absence was not the result of the prosecution once again failing to execute a writ.

¶ 27    But the court *did* credit the prosecution's representation regarding Anderson's refusal of the writ when it said it had no "reason to disbelieve the representations of the district attorney." Moreover, at the end of the February 27 hearing, the prosecutor told the court that, at 8:09 a.m. that morning, his office had received the "exact communication" from the Adams County sheriff's office regarding the attempt to transport Anderson from the jail to the courthouse.[3] Defense counsel did not dispute the prosecution's statement. To the extent that Anderson offers

---

[3] Although the court told the prosecutor he could "upload [the communication] from the Adams County sheriff "into the [court] file," it does not appear that the prosecutor ever did so.

potential scenarios on appeal to explain why the prosecution's representation would not have been credible, these are speculative and lack record support.

¶ 28    In sum, there is nothing in the record to suggest that Anderson's failure to appear at the February 27 hearing was due to anything other than his refusal of the writ.  The expedited writ for him to appear at the February 27 hearing was filed by the prosecution and issued by the court on February 10, 2023.  The only thing defense counsel offered to refute the prosecution's representation was to say, "I don't know that the Court has grounds to rely on that representation."

¶ 29    Despite Anderson's contentions to the contrary, the district court's good cause finding was adequate and supported by the record.  The court found that, based on the "overall record," it had no reason to disbelieve that Anderson had refused the writ, and because he was absent but wished to be present for a restitution hearing — a right to which he was entitled, *see People v. Hernandez,* 2019 COA 111, ¶ 24 — on the substantial amount requested by the prosecution, there was good cause to continue to hearing past the ninety-one-day deadline to impose restitution.

### III. Proximate Cause

¶ 30    Anderson contends that the restitution order should be vacated because the prosecution failed to present sufficient evidence to prove by a preponderance of the evidence that the claimed losses were proximately caused by his conduct. He specifically argues that the letter from MDHS only indicated that the victim's medical expenses were "related to" the injury from September 6, 2020; that the claims history profile is "hardly self-explanatory"; and that some of the claims appear not to be attributable to the victim's paralysis because they have diagnosis codes related to substance abuse, general pain, meals, or "unspecified" illnesses. Because the district court's findings as to the claims comprising the $62,563.16 award are insufficient for appellate review, we remand the case to the district court for clarification.

#### A. Preservation and Standard of Review

¶ 31    Although the People argue that Anderson only partially preserved this claim for appeal, preservation was not necessary because challenges to the sufficiency of evidence supporting

restitution may be raised for the first time on appeal. *See McCoy v. People*, 2019 CO 44, ¶ 19.

¶ 32 In the restitution context, we review for clear error the district court's determination that the defendant proximately caused the victim's losses. *Martinez v. People*, 2024 CO 6M, ¶ 32. But when, as here, a defendant challenges the sufficiency of the evidence supporting the amount of restitution awarded — that is, a challenge to the *quantum* of evidence provided to the court — our review is de novo. *See id.* at ¶¶ 19-22. When conducting this review, we determine "whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that the defendant caused that amount of loss." *People v. Barbre*, 2018 COA 123, ¶ 25.

## B. Applicable Law

¶ 33 Criminal defendants must "make full restitution to those harmed by their misconduct." § 18-1.3-601(1)(b), C.R.S. 2025. Restitution "means any pecuniary loss suffered by a victim . . . proximately caused by an offender's conduct . . . that can be reasonably calculated and recompensed in money."

§ 18-1.3-602(3)(a), C.R.S. 2025. "Proximate cause in the context of restitution is defined as a cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained." *People v. Rivera*, 250 P.3d 1272, 1274 (Colo. App. 2010).

¶ 34 The prosecution bears the burden of proving by a preponderance of the evidence the victim's losses and that the victim's losses were proximately caused by the defendant's criminal conduct. *People v. Martinez-Chavez*, 2020 COA 39, ¶ 14. The prosecution may rely solely on documentary evidence to meet its evidentiary burden. *People in Interest of A.V.*, 2018 COA 138M, ¶ 35. "A fact is established by a preponderance of the evidence when, upon consideration of all the evidence, the existence of that fact is more probable than its nonexistence." *People v. Garner*, 806 P.2d 366, 370 (Colo. 1991).

## C. Analysis

¶ 35 MDHS said in its letter that it had spent $62,563.16 in medical expenses "related to" the victim's injuries from September 6, 2020, which were broken out by claim in the claims history

profile.  But, as Anderson suggests, the notations on the claims history profile are impossible to interpret without more information.

¶ 36     For example, aside from what appears to be five claims for prescription medications, each of the other ninety-eight claims includes one or more diagnosis codes.  And all but four of those claims have one of the diagnosis codes circled.  Of those, twenty-four claims have the code "[p]araplegia, unspecified" circled, which could arguably be associated with the victim's partial paralysis.  But thirty-nine other claims have a different code circled, like "[c]hest pain, unspecified," "[w]eakness," "[o]ther chronic pain," or other specialized medical terms.  Twenty of those thirty-nine claims list "[p]araplegia, unspecified" as a code, but it is not circled.  And thirty-one separate claims have "[i]llness, unspecified" circled and list no other codes.[4]

¶ 37     Furthermore, while most claims appear to be associated with multiple diagnosis codes (including things like "[n]icotine dependence") and show some kind of breakdown of costs by line

---

[4] In addition to the above, one record includes a single code of "illness, unspecified," and does not list any others, but it is not circled.

item, only one code is circled on each claim and, yet, the entire claim total is circled.

¶ 38   And, perhaps most importantly, while all but one claim includes a circled amount, the total of the circled amounts adds up to $62,412.16, and not $62,563.16.

¶ 39   Whether we should assign special significance to the inconsistently circled amounts and diagnosis codes is unclear. What is clear, however, is that without additional factual findings by the district court, we are unable to determine which claim amounts make up the $62,563.16 restitution award. While the letter from MDHS and the claims history profile are sufficient to support a finding that at least some of the claims are related to the victim's injuries from the shooting, we cannot discern what those supporting claims are. The court's findings are therefore insufficient for appellate review, and a remand is necessary. *See People v. D.F.*, 933 P.2d 9, 14 (Colo. 1997) ("When appellate review is hindered by the absence of factual findings as to key contested issues, or when unresolved evidentiary conflicts exist with regard to material facts, we have remanded for further fact finding by the trial court."); *Cronk v. Bowers*, 2023 COA 68M, ¶ 33 ("Of course, the

18

court 'must make sufficient findings to permit meaningful appellate review.'" (quoting *Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1211 (Colo. App. 2010))).

## IV. Correction of the Mittimus

¶ 40    The district court did not address restitution on the mittimus. Accordingly, the court should amend the mittimus to reflect any restitution that is ordered following the court's additional factual findings. *See* Crim. P. 36 ("Clerical mistakes in judgments, orders, or other parts of the record . . . arising from oversight or omission may be corrected by the court at any time . . . .").

## V. Disposition

¶ 41    The restitution order is reversed, and the case is remanded to the district court to conduct further proceedings consistent with this opinion.

JUDGE GOMEZ and JUDGE MOULTRIE concur.